12221

McDOWELL *ET AL.* v. CUNNINGHAM *ET AL.*

(138 S. E., 625)

1. Marriage—Evidence Held Insufficient to Establish Formal or Moral Marriage of Decedent and Defendant's Mother, Former Slaves, Under Slave Marriage Acts (Slave Marriage Acts of December 21, 1865, and March 12, 1872).—Evidence showing only possible clandestine visits *held* insufficient to establish formal or moral marriage between defendant's mother and decedent, both former slaves, under Slave Marriage Acts of December 21, 1865 (13 St. at Large, p. 291), and March 12, 1872 (15 St. at Large, p. 183).

2. Slaves—Recognition by Putative Father Will Not Legitamatize Child Not Product of Moral Marriage.—Recognition by a putative father will not legitimatize unless the child is the product of a moral marriage.

Before Shipp, J., Greenwood, Fall Term, 1924. Affirmed.

Action by Pearce McDowell and others against John Frank Cunningham and others. From judgment for plaintiffs, defendants appeal. Affirmed.

The following is the lower Court's decree:

"This is an action commenced by the service of summons and complaint for the partition of a lot of land of which Frank Cunningham died seized and possessed during the year 1919, which lot is described in the complaint. The plaintiffs allege in their complaint that they are the sole heirs and distributees of Frank Cunningham. The defendant, John Frank Cunningham, procured his appointment as administrator of the estate of Frank Cunningham, and upon the service of the summons and complaint, answered, alleging that he was the sole heir and distributee of the intestate, Frank Cunningham.

"The interest of the defendant, Wess Davis, is not contested, he being the owner and holder of a mortgage which is the first lien on the premises, the amount of the mortgage to be determined by the master. The matter was referred and reference held and now comes before me on the testimony taken.

"The defendant, John Frank Cunningham, bases his legitimacy and right to the intestate estate upon an alleged form of marriage between Frank Cunningham and his mother, Lizzie, prior to emancipation, and cohabitation after the emancipation to the year 1868, in which year Frank Cunningham formally married Armenda Foster.

"The rights of the respective parties are determined by the Enabling Acts of December 21, 1865 (13 St. at Large, p. 291), and those amendatory of March 12, 1872 (15 St. at Large, p. 183), as applied to the testimony adduced at the reference. These acts are commonly known as the Slave Marriage Acts and have been before the Courts in all of their phases. Their constitutionality was sustained in the case of *Davenport v. Caldwell*, 10 S. C., 317, and have been uniformly applied in an unbroken line of decisions: *Cle-*

*ment v. Riley,* 33 S. C., 81; 11 S. E., 699. *Roberson v. McCauley,* 61 S. C., 411; 39 S. E., 570. *Watson v. Ellerbe,* 77 S. C., 232; 57 S. E., 855. *Taggart v. Taggart,* 89 S. C., 490; 71 S. E., 1081.

"The testimony totally failed to establish a formal marriage between Frank Cunningham and Lizzie, the mother of John Frank Cunningham, prior to emancipation. The most favorable view of the evidence in behalf of the defendant negatives the inference that they ever cohabitated as man and wife or that the community ever regarded them as such.

"The evidence overwhelmingly preponderates against the establishment of either of these essential questions of fact, and the contemporaneous conduct of Lizzie is clearly indicative of the nature of her relations, if any, she had with Frank Cunningham. She raised no dissenting voice when Frank was formally married in 1868. She married Mose Patterson, bore children, separated from him, and married Wyatt Hackett and bore children, and, so far as the record discloses, she is still alive. The preponderance of the testimony prohibits any inference of any relationship between Frank and Lizzie other than the possible clandestine visits to Lizzie while she made temporary visits to her sister who lived on the same plantation on which Frank lived. Such a relation could not constitute a moral marriage within the purview of the statute and the decisions thereunder.

"As to the recognition of John Frank Cunningham by Frank Cunningham, the testimony clearly preponderates against the finding that he was ever regarded or recognized as a lawful child. His characterization of Frank as a 'woods colt' is clearly indicative of the nature of the recognition accorded Frank. The testimony of reputable gentlemen of long acquaintance of Frank Cunningham is fatal to defendant's contention that he was ever recognized as other than an illegitimate. Recognition by a

putative father will not legitimatize unless the child is the product of a moral marriage.

"Armenda Foster and Frank Cunningham admittedly formally married in 1868 and lived continuously together until their death about 1919. Theirs was a marital relation that covered more than half a century and carries with it every presumption of legality. The Court is asked to disturb this relationship by testimony that goes back to the twilight of memory and directed to the brief period of about three years prior to 1868. On this question of fact essential to defendants' claim the evidence overwhelmingly preponderates in favor of the plaintiffs.

"It is therefore ordered, adjudged, and decreed that the plaintiffs be, and the same are, adjudged the sole heirs at law and distributees of the intestate, Frank Cunningham.

"It is further ordered that the defendant, John Frank Cunningham, account for and turn over to the Probate Judge for Greenwood County, all rents, profits, and other funds received by him as administrator of the estate of Frank Cunningham.

"It is ordered that the Judge of the Greenwood County Court, ex officio Master, sell the lot of land mentioned and described in the complaint on salesday in December, 1924, or some subsequent salesday thereafter, at public auction to the highest bidder for cash after due advertisement thereof.

"It is further ordered that the proceeds of sale be applied to the payment of the costs and disbursements of this action, the balance due on the mortgage debt and any surplus remaining to be paid to the plaintiffs in accordance with their respective rights.

"It is further ordered that the plaintiffs may apply at the foot of this decree for any further or supplemental order hereto."

*Messrs. Mayes & Featherstone,* for appellants, cite: *In cases of conflicting presumptions, that in favor of legitimacy will prevail:* 7 C. J., 940; Id., 945; 118 S. C., 420; 3 R.

C. L., 725. *Recognition by father:* 36 S. C., 545; 93 S. C., 435, 440. *Moral marriage:* 33 S. C., 79.

*Messrs. W. H. Nicholson* and *R. F. Davis,* for respondents, cite: *Recognition by a putative father will not legitimatize unless child is the product of a moral marriage:* 61 S. C., 411. *Presumption of lower Court in case at bar merely one of the evidentiary facts that influenced the finding of fact:* 101 S. C., 40; 118 S. C., 420. *Where the evidence supports the findings of fact, the view of the trial Court as to burden of proof is immaterial:* 122 S. C., 461. *Incumbent on appellant to show that circuit decree is against the weight of evidence:* 12 S. C., 346; 124 S. C., 506; 125 S. C., 68; 127 S. C., 141; 116 S. C., 97; 92 S. C., 113. *Purpose of Slave Marriage Act:* 33 S. C., 81. *Applied only to children of a moral marriage:* 77 S. C., 232; 93 S. C., 444; 3 R. C. L., 724; 89 S. C., 490.

June 16, 1927.

The opinion of the Court was delivered by Mr. Chief Justice Watts.

For the reasons stated by his Honor, Judge Shipp, it is the judgment of this Court that the judgment of the Circuit Court be affirmed.

MESSRS. JUSTICES COTHRAN, BLEASE, STABLER and CARTER concur.